STRADLEY RONON STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
By:    Robert J. Norcia (NJ Attorney I.D.: 165172015)
        Deenah Z. Sirota (NJ Attorney I.D.: 154122016)
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002
T: (856) 321-2400
F: (856) 321-2415
E: rnorcia@stradley.com; dsirota@stradley.com
*Attorneys for Defendant, Horizon Blue Cross Blue Shield of New Jersey*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GPS OF NEW JERSEY MD, P.C. A/S/O T.U.,<br><br>                    Plaintiff,<br><br>          v.<br><br>HORIZON BLUE CROSS BLUE SHIELD, JOHN DOE (1-100), a fictitious person who is presently unknown and XYZ CORP. (1-100), a fictitious partnership, corporation, sole proprietorship, limited liability company and/or Self-Funded health and welfare plan whose identity is presently unknown,<br><br>                    Defendants. | No. 2:22-CV-06614-KM-JBC |

## BRIEF OF DEFENDANT HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY IN OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE AND IN SUPPORT OF CROSS-MOTION TO CONFIRM ARBITRATION AWARD

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

    A.    The Parties. .................................................................................. 3

    B.    The NSA's Relevant Provisions ...................................................... 3

    C.    GPS's Claim for Benefits and the Subsequent Negotiations and Binding Arbitration. .................................................................... 6

    D.    iPRO's Award in Favor of Horizon. ............................................... 8

LEGAL ARGUMENT ..................................................................................... 8

    A.    The Applicable Standard. ............................................................... 8

    B.    The iPRO Arbitrator Did Not Engage in Prejudicial Misconduct. 10

    C.    iPRO's Failure to Render a Detailed Arbitration Decision Does Not Render the Arbitration Award Defective. ..................................... 14

    D.    Horizon's Cross-Motion for an Order Confirming the Arbitration Award Should Be Granted. ......................................................... 18

CONCLUSION ............................................................................................ 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Brentwood Med. Associates v. United Mine Workers of Am.,
396 F.3d 237 (3d Cir. 2005), as amended (Mar. 17, 2005) ................................. 8

CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.,
19 F.4th 236 (3d Cir. 2021) ................................ 11

First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938 ................................ 8

Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,
207 L. Ed. 2d 819, 140 S. Ct. 2367 (2020) ........................ 16

Advanced Orthopedics & Sports Med. Inst. o/b/o M.S. v. Anthem
Blue Cross Life & Health Ins. Co.,
2022 WL 13477952 (D.N.J. Oct. 21, 2022) ........................ 1

Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.,
868 F.2d 52 (3d Cir. 1989) ................................ 8, 9

Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,
397 F.2d 594 (3d Cir. 1968) ................................ 11

News Am. Publications, Inc. Daily Racing Form Div. v. Newark
Typographical Union, Local 103,
918 F.2d 21 (3d Cir. 1990) ........................ 9, 13

Oxford Health Plans LLC v. Sutter,
569 U.S. 564 (2013) ................................ 8, 15

PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh,
19 F.4th 308 (3d Cir. 2021) ................................ 9

Sutter v. Oxford Health Plans LLC,
675 F.3d 215 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 569
U.S. 564 (2013) ................................ 14

ii

Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.,
    587 F. Supp. 3d 528, 535 (E.D. Tex. 2022), appeal dismissed, No.
    22-40264, 2022 WL 15174345 (5th Cir. Oct. 24, 2022) ...................... 12, 13, 16

United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs,
    Warehousemen & Helpers of Am., Local Union No. 430,
    55 F.3d 138 (3d Cir. 1995) ................................................................... 14

**Statutes**

9 U.S.C. § 9 ............................................................................................ 18

9 U.S.C. § 10 .................................................................................... passim

42 U.S.C. 300gg-111 ....................................................................... passim

42 U.S.C. § 300gg-131 ............................................................................ 4

42 U.S.C. § 300gg-132 ............................................................................ 4

N.J.S.A. 26:2SS-10 ................................................................................ 16

Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (Dec.
    27, 2020) ............................................................................................... 3

**Other Authorities**

45 C.F.R. 149.30 ...................................................................................... 4

86 Fed. Reg. 36872-01 Part I ................................................................... 4

Federal Rule of Civil Procedure 52(a)(1) ...................................... 2, 14, 16

## PRELIMINARY STATEMENT

This summary proceeding arises out of a binding arbitration pursuant to the recently enacted "No Surprises Act" ("NSA"). See 42 U.S.C. § 300gg-111(c). Among other things, the NSA established a binding arbitration process for health insurance carriers like Defendant, Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), and out-of-network providers like Plaintiff, GPS of New Jersey MD, P.C. a/s/o T.U. ("GPS"), to efficiently resolve disputes over the amount of reimbursement for out-of-network emergency services. Id.

T.U. is an individual who received health insurance benefits through a plan issued or administered by Blue Cross Blue Shield of Michigan ("BCBS Michigan"). T.U. underwent allegedly emergent surgery from GPS, an out-of-network provider located in New Jersey. Since the services were rendered in New Jersey by an out-of-network provider, GPS submitted the claims for benefits to Horizon for "pricing" pursuant to the "BlueCard" program and Horizon then transmitted the claim information to BCBS Michigan for a final determination on the amount to pay pursuant to the terms, conditions, and limitations of the plan issued or administered by BCBS Michigan.[1] After performing the surgery, Horizon issued a payment to

---

[1] See Advanced Orthopedics & Sports Med. Inst. o/b/o M.S. v. Anthem Blue Cross Life & Health Ins. Co., 2022 WL 13477952, at *3 (D.N.J. Oct. 21, 2022) (noting that, "[u]nder the BlueCard Program, Horizon and Anthem provide claims processing and adjudication services to out-of-state Blue Cross and/or Blue Shield Plans across the country through a single electronic network for claims processing and reimbursement" and "[u]nder the BlueCard Program, when you receive covered services within the geographic area served by a Host

GPS for the services as directed by BCBS Michigan pursuant to the "BlueCard" program and the terms, conditions, and limitations of T.U.'s health benefits plan. GPS, unsatisfied with the payment amount, initiated the dispute, negotiation, and arbitration process pursuant to the NSA.  On August 18, 2022, a certified Independent Dispute Resolution ("IDR") entity, Island Peer Review Organization D/B/A iPRO ("iPRO"), issued a binding arbitration award (the "Award") in favor of Horizon and found its payment to be more "fair and reasonable" reimbursement for the out-of-network services GPS rendered to patient T.U. GPS now seeks to set aside the Award pursuant to 9 U.S.C. § 10, claiming iPRO committed "prejudicial misbehavior," imperfectly executed its powers, and violated Federal Rule of Civil Procedure 52(a)(1).  GPS's arguments seeking vacation of the Award and a remand to iPRO fall far short of meeting the high burden necessary to vacate or modify the Award.

GPS's arguments are premised on an apparent misunderstanding of the NSA's requirements.  The NSA does not specify the required contents of an arbitration decision, nor does it mandate that such a decision comply with Federal Rule of Civil Procedure 52(a)(1).  Rather, the NSA simply requires arbitrators to take certain identified considerations into account when determining which of the parties'

---

Blue," (such as Horizon in this matter), "the claims administrator" (BCBS Michigan here) "will still fulfill the plan's contractual obligations").

submitted offer amounts are more "fair and reasonable" for the out-of-network emergency services rendered. That is what occurred here, and GPS's motion amounts to nothing more than an attempt to secure a do-over without coming close to demonstrating that the Award is subject to vacation under the Federal Arbitration Act ("FAA").

For these reasons and the reasons more fully discussed below, this Court should deny GPS's Order to Show Cause and grant Horizon's Cross-Motion to Confirm the Award.

## STATEMENT OF FACTS

### A. The Parties.

GPS is an out-of-network medical provider with a principal place of business in Perth Amboy, New Jersey. As an out-of-network provider, GPS does not have a contract with Horizon setting negotiated rates of reimbursement for health care services rendered to Horizon insureds. Patient T.U. is an individual who received health insurance benefits from Horizon. Horizon is a for profit stock insurer that issues or administers various types of health benefit plans, including individual, employer-sponsored, and governmental plans.

### B. The NSA's Relevant Provisions.

The NSA was enacted as part of the Consolidated Appropriations Act of 2021 to address "surprise medical bills." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (Dec. 27, 2020); 42 U.S.C.

3

300gg-111 et seq. The NSA was designed to "protect participants, beneficiaries, and enrollees in group health plans and group and individual health insurance coverage from surprise medical bills when they receive emergency services, [and] non-emergency services from nonparticipating providers at participating facilities . . . under certain circumstances." Requirements Related to Surprise Billing, Part I, 86 Fed. Reg. 36872-01.

The NSA requires, among other things, that out-of-network providers disclose their network status with a patient's health insurer, see 42 U.S.C. § 300gg-132(d), and when a patient is seen on an emergency basis the out-of-network provider is limited to charging the patient only their "cost-sharing requirement[2] for such services furnished by the provider." 42 U.S.C. § 300gg-131. Further, the NSA addresses the payment due to an out-of-network provider of emergency services, which is to be paid at an "out-of-network rate." This out-of-network rate is determined by the applicable state law through an "All-Payer Model Agreement," or if none exists, then pursuant to agreement between the out-of-network provider and the health insurer. 42 U.S.C. § 300gg-111(a)(3)(k).

---

[2] "Cost sharing generally includes copayments, coinsurance, and amounts paid towards deductibles, but does not include amounts paid towards premiums, balance billing by out-of-network providers, or the cost of items or services that are not covered under a group health plan or health insurance coverage." 45 C.F.R. 149.30.

If a patient receives services from an out-of-network provider on an emergency basis and the carrier and provider cannot agree on the amount of reimbursement, the out of network rate may be determined by an IDR entity. The IDR entity must make a determination as to the out-of-network rate pursuant to an IDR process set forth under the NSA. The NSA's binding, final-offer arbitration process consists of the IDR entity selecting a proposed offer of payment submitted by either the provider or carrier. 42 U.S.C. § 300gg-111(c)(5). In addition to the proposed offers submitted by the provider and carrier, the IDR entity "shall consider" the qualifying payment[3] amount for the service and certain identified additional circumstances submitted by the parties.[4] Id. The IDR entity is prohibited

---

[3]   The Qualified Payment Amount is defined as "the median of the contracted rates recognized by the plan or issuer" for the same item or service furnished by a provider in the same or similar specialty and in the same geographic region. 42 U.S.C. § 300gg-111(a)(3)(E).

[4]   The additional circumstances are limited to information requested by the arbitrator related to the offer, and

>  (I) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service . . . .
>  (II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.
>  (III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.
>  (IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.
>  (V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

from considering "usual and customary charges," "the amount that would have been billed by such provider or facility with respect to such items and services had the provisions of [the NSA] not applied," or the reimbursement rate of a public payor, such as Medicare, Medicaid, or Tricare.  Id.

The NSA further provides that a "determination of a certified IDR entity . . . **shall be binding** upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(c)(5)(E) (emphasis added).  Under the NSA, the determination of the certified IDR entity "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9 [the FAA]."  42 U.S.C. § 300gg-111(c)(5)(E).

### C.    GPS's Claim for Benefits and the Subsequent Negotiations and Binding Arbitration.

On February 5, 2022, T.U. underwent emergency and/or inadvertent surgery performed by GPS in connection with a contusion to his or her left cheek and laceration to nasal tip and upper lip.  See Claim Form, attached as Exhibit C, to GPS's Verified Complaint.  After performing this allegedly emergent surgery, GPS submitted a claim for reimbursement to Horizon for "pricing" and transmission to BCBS Michigan to make a final determination on the amount to pay pursuant to the

---

42 U.S.C. § 300gg-111(c)(5)(C).

terms, conditions, and limitations of the health benefits plan that BCBS Michigan issued or administered and which covered T.U.  In adjudicating the claim, BCBS Michigan directed a total allowed amount of $430.84 for the services rendered on February 5, 2022, with $362.05 applied to T.U.'s deductible and $46.36 paid to GPS. And as directed, Horizon issued an explanation of payment to GPS reflecting this claim adjudication and remitting payment of $46.36 to GPS.  See Horizon Explanation of Payment, attached as Exhibit C to Exhibit B of GPS's Verified Complaint.

Unsatisfied with the amount of payment, GPS commenced the dispute resolution process under the NSA by submitting a "Notice of Open Negotiation." After failed negotiations over the out-of-network rate, GPS filed for arbitration and a certified IDR entity, iPRO, was selected to arbitrate and issue a binding award determining the more fair and reasonable out-of-network rate, as required by the NSA.  Thereafter, both parties submitted proposed offers of payment for the out-of-network rate, as well as additional information for the arbitrator to consider.  In doing so, Horizon submitted a "Federal Independent Dispute Resolution Process Notice of Offer" identifying its "final offer" of $408.41.  (A true and accurate copy of Horizon's "Notice of Offer" is attached to the Certification of Tracy Collette ("Collette Cert.") as Exhibit 1).

### D.    iPRO's Award in Favor of Horizon.

On August 18, 2022, iPRO determined that Horizon's final offer of $408.41 was more "fair and reasonable as reimbursement for the services in dispute."  See iPRO's Arbitration Award, attached as Exhibit A to GPS's Verified Complaint; see also Collette Cert., Exh. 1.   In reaching this decision, iPRO "review[ed] all correspondence from both parties." Id.  Apparently displeased with this result, GPS commenced this summary proceeding seeking vacation of the Award pursuant to 9 U.S.C. § 10(a).

## LEGAL ARGUMENT

### A.    The Applicable Standard.

The court's review of an arbitration award is "severely limited." Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989). An arbitration award is "presumed valid" as there is a "strong presumption" under the FAA in favor of enforcing arbitration awards.  See Brentwood Med. Associates v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005), as amended (Mar. 17, 2005).  "[T]he court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943(1995).  A court may not review the merits of an arbitration award simply because it disagrees with the findings of the arbitrator.  See Oxford Health Plans LLC v. Sutter, 569 U.S. 564,

572–73 (2013).  A court cannot even review the award to "ascertain whether the arbitrator has applied the correct principles of law."  News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990).  "An arbitral award may not be overturned for factual error, or because the court disagrees with the arbitrator's assessment of the credibility of witnesses, or the weight the arbitrator has given to testimony." Id. (internal citations and quotations omitted).

The party seeking to vacate the arbitration award bears a heavy burden of proof.  PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308, 314 (3d Cir. 2021); see also Norad Reinsurance Co., 868 F.2d at 57 (stating "an arbitration award should only be upset with great hesitation and then only where the party attacking it clearly establishes one of the grounds specified in §10 [of the FAA]").  The only circumstances for vacating an arbitrator's award issued pursuant to the NSA are set forth under Section 10(a) of the FAA, which are as follows:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

9

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See also 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (limiting judicial review of a binding arbitration award entered pursuant to the NSA to the four factors described in Section 9 U.S.C. § 10(a)(1)-(4)).

As set forth below, GPS argues that the Court should vacate the binding arbitration award because the arbitrator allegedly engaged in "prejudicial misbehavior" and imperfectly executed their powers such that a "mutual, final, and definite award upon the subject matter submitted was not made." GPS further argues that the Award should be vacated because it did not comply with Federal Rule of Civil Procedure 52(a)(1). GPS's arguments lack merit and fall far short of meeting the high burden required to vacate the Award.

### B.    The iPRO Arbitrator Did Not Engage in Prejudicial Misconduct.

GPS seeks to vacate the Award in this matter on the basis that the iPRO arbitrator allegedly committed "prejudicial misbehavior." Under Section 10(a)(3) of the FAA, a court may vacate an arbitration award where the arbitrator engages in misconduct by "refusing to postpone the hearing," "refusing to hear evidence pertinent and material to the controversy," or "any other misbehavior by which the rights of any party have been prejudiced." Misconduct, under this Section, is conduct

that "so affects the rights of a party that it may be said that he was deprived of a fair hearing." Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968). A fair hearing is "one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." CPR Mgmt., S.A. v. Devon Park Bioventures, L.P., 19 F.4th 236, 245 (3d Cir. 2021). Not "every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." Newark Stereotypers' Union No. 18, 397 F.2d at 599.

Here, GPS cannot meet its burden of demonstrating that it was prejudiced by the arbitrator's decision sufficient to justify vacating the Award. While GPS has suggested that it was somehow disadvantaged because the IDR entity selected Horizon's final offer of payment, GPS fails to identify *any* evidence that iPRO failed to consider its arbitration submissions, nor does GPS even claim that it did not have the "opportunity to present evidence and arguments before an impartial arbitrator." See CPR Mgmt., S.A., 19 F.4th at 245. Rather, given that the arbitrator ultimately selected Horizon's offer as the out-of-network rate, GPS implies that the arbitrator failed to consider its submissions. However, such an argument is contrary to the arbitrator's "Written Payment Determination," which specifies that the determination was made "[a]fter reviewing *all* correspondence from *both parties*." See iPRO's Arbitration Award, attached as Exhibit A to GPS's Verified Complaint

11

(emphasis added).  The fact that the arbitrator selected Horizon's offer, without more, is insufficient to establish that GPS was deprived of a fair arbitration.  Indeed, the Award issued here was consistent with the NSA's purposes—to efficiently resolve out-of-network reimbursement disputes by selecting either the provider's or the carrier's "offer" in the arbitration.  That is what occurred here, and GPS's mere disagreement with the result is insufficient to warrant vacation and remand.

Failing to appreciate the high deference provided to an arbitrator's decision, GPS contends that by considering and ultimately selecting the Qualifying Payment Amount ("QPA"), the arbitrator impermissibly placed that factor above the other evidence submitted, including GPS's own lengthy submission.  GPS provides no support for its theory, but rather points to a case that is distinguishable to the present case, and non-binding on this Court.  In Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs., the Eastern District of Texas struck down an interim final rule of the Department of Health and Human Services ("HHS") that created a rebuttable presumption that the out-of-network rate is the amount closest to the QPA. See 587 F. Supp. 3d 528, 535 (E.D. Tex. 2022), appeal dismissed, No. 22-40264, 2022 WL 15174345 (5th Cir. Oct. 24, 2022).  The primary dispute in Texas Medical Association was not the sufficiency of an award issued pursuant to the NSA; rather, the dispute centered on whether HHS promulgated a regulation that conflicted with the text of the NSA and whether it complied with the Administrative Procedures Act.

See id.  The court did not, as GPS claims here, review the *merits* or *sufficiency* of an *arbitrator's decision.*  See id.; see also News Am. Publications, Inc. Daily Racing Form Div., 918 F.2d at 24.

GPS's arguments relating to the QPA are supported by speculation and nothing else.  Just because iPRO determined Horizon's final offer, which was equal to the QPA, was more "fair and reasonable" does not mean that the arbitrator failed to consider all of the other additional circumstances cited in 42 U.S.C. § 300gg-111(c)(5)(C)(ii), many of which were addressed by GPS in its written submission to iPRO.  GPS's position, if accepted, would open the proverbial floodgates of challenges to every NSA arbitration award that was equal or close to the QPA.  That is not the law, and it flies in the face of the NSA's purpose to efficiently resolve out-of-network reimbursement disputes as well as the abundance of well-established case law concerning judicial review of an arbitrator's decision.

GPS fails to meet its high burden to support vacating the arbitration award on the basis of alleged prejudicial misconduct.  Even if the Court or GPS believes that iPRO should have found GPS's position more credible, that is not enough to invalidate the arbitration award in this case.

**C.    iPRO's Failure to Render a Detailed Arbitration Decision Does Not Render the Arbitration Award Defective.**

GPS also seeks vacation of the Award because iPRO allegedly "imperfect[ly] execut[ed]" its powers "such that an award upon the subject matter submitted was not made."  As support for this thin argument, GPS relies on Federal Rule of Civil Procedure 52(a)(1), which governs "Findings and Conclusions by the Court."  Under Section 10(a)(4) of the FAA, a court may vacate an arbitration award where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  To establish a basis for vacation under this sub-section, the party seeking vacation must establish that the arbitrator "decide[ed] an issue not submitted to him, grant[ed] relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issue[d] an award that is so completely irrational that it lacks support altogether." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219–20 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 569 U.S. 564 (2013) (internal citations and quotations omitted).

When an arbitrator makes a good faith effort to render a decision within the scope of its authority, "even serious errors of law or fact will not subject his award to vacatur." Id. at 220.  Moreover, "ambiguity in an opinion accompanying an award is not a reason for determining that an award is unenforceable as beyond the scope of the arbitrator's authority." United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters,

14

<u>Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 430</u>, 55 F.3d 138, 141 (3d Cir. 1995).

Here, the arbitrator clearly issued a decision based on the final offers and materials submitted.  This result was clearly within the scope of the arbitrator's authority under the NSA—that is, to determine the most fair and reasonable out-of-network rate based on the offers and submissions from GPS and Horizon.  Indeed, the NSA provides that the arbitrator shall, after "taking into account the considerations [related to the QPA and additional considerations][5] . . . select one of the offers submitted [by the parties] to be the amount of payment for such item or service determined . . . and[] notify the provider or facility and the group health plan or health insurance issuer . . . to such determination of the offer selected . . . ." 42 <u>U.S.C.</u> § 300gg-111(c)(5)(A).  That is precisely what occurred here.

In GPS's view, the fact that there is not a detailed decision setting forth the various weights given to the evidence submitted and considered, along with the name of the individual that rendered the decision, renders iPRO's decision defective and subject to vacation.  GPS's proffered interpretation of the NSA violates the

---

[5] Based on GPS's submissions, attached as Exhibit B to GPS's Verified Complaint, the only additional circumstances that GPS included, which were required to be considered by the arbitrator pursuant to the NSA, was the level of training and experience of the medical provider, as well as the teaching status and scope of services rendered at the facility.  <u>See</u> 42 <u>U.S.C.</u> § 300gg-111(c)(5)(A).  As per the Award, iPRO "review[ed] all correspondence from both parties." It is not the role of this Court to evaluate the merits of the arbitrator's decision. <u>See, e.g.</u>, <u>Sutter</u>, 569 U.S. at 572–73.

"fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts." <u>Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania</u>, 207 L. Ed. 2d 819, 140 S. Ct. 2367, 2381 (2020) (internal citations and quotations omitted). A court cannot impose additional terms not found in the text of the statute or guiding regulations. <u>Id.</u> The NSA does not specify the required content of an arbitration decision, nor does it mandate that such a decision comply with Federal Rule of Civil Procedure 52(a)(1), which is a rule pertaining to findings and conclusions *by a court* and has no bearing on the form of an arbitration award. Rather, the NSA simply requires arbitrators to take certain identified considerations into account when determining which offer of payment to apply. <u>See</u> 42 <u>U.S.C.</u> § 300gg-111(c)(5)(A). And as demonstrated by the Award and the underlying submissions, that is precisely what the arbitrator did here.

Notably, in response to the <u>Texas Medical Association</u> decision relied upon by GPS for support to vacate the Award, New Jersey revised its Out-of-Network Consumer Protection, Transparency, Cost Containment, and Accountability Act (the "NJ Act") to require arbitrators to issue "detailed written findings." <u>N.J.S.A.</u> 26:2SS-10. However, there is no such equivalent requirement under the Federal NSA.[6] Even <u>Texas Medical Association</u>—the primary authority relied upon by GPS—does

---

[6]  Regardless, iPRO issued a Written Payment Determination on August 18, 2022—before the more stringent NJ Act took effect on October 27, 2022.

not impose such a requirement. GPS simply cannot impose a requirement onto the arbitrator not required by statute.

To the extent that GPS alleges that the arbitrator was "anonymous," and therefore not qualified to render an arbitration decision in this matter, GPS ignores the heightened requirements for an arbitrator rendering a decision pursuant to the NSA—the arbitrator is required to be certified by the Secretaries of Health, Labor, and the Treasury, and have "sufficient medical, legal, and other expertise" to make a determination under the NSA. 42 U.S.C. § 300gg-111(a)(3)(k)(ii)(II); 42 U.S.C. § 300gg-111(c)(4)(A). It is undisputed that iPRO is a certified and approved IDR entity, and that the award was rendered by iPRO. The NSA is silent as to whether the specific identity of the individual rendering the arbitration decision must be disclosed. The NSA does not require disclosure of the individual's name, and GPS's arguments to the contrary attempt to impose requirements not found in the statute.

Moreover, GPS misunderstands the purpose and requirements of the dispute, negotiation, and arbitration process set forth under the NSA: vacating the award under these circumstances would undermine the primary purpose and effect of the NSA's pendulum-style arbitration process, which encourages parties to arrive at settlement as parties that fail to compromise during negotiations risk a total loss on the arbitrated amounts under the NSA. If the Court grants GPS's requested relief, it would open the door to untold multiple court challenges just from arbitration

decisions issued under the NSA, where disappointed parties would come to the Court and demand the Court parse the reasoning of the arbitrators, all with an eye to secure a do-over.

Accordingly, the iPRO arbitrator did not exceed its powers by selecting Horizon's final offer of payment on the claim.

### D.    Horizon's Cross-Motion for an Order Confirming the Arbitration Award Should Be Granted.

Pursuant to Section 9 of the FAA, a party to an arbitration may commence a summary action in court for confirmation of the award, and "the court ***must*** grant such an order unless the award is vacated, modified, or corrected as prescribed [by the FAA]."  9 U.S.C. § 9 (emphasis added).[7]  As set forth above, GPS has failed to meet its heavy burden of demonstrating proper grounds for vacatur of the arbitration award.  Accordingly, Horizon is entitled to an order confirming the Award.

## CONCLUSION

For the foregoing reasons, Defendant Horizon Blue Cross Blue Shield New Jersey respectfully requests this Court deny GPS's Order to Show Cause, dismiss the Verified Complaint with Prejudice, and confirm iPRO's arbitration award.

---

[7]    Moreover, pursuant to the NSA, determination of a certified IDR entity . . . shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(c)(5)(E).

*/s/ Robert J. Norcia*

Robert J. Norcia, Esq.
Deenah Z. Sirota, Esq.
STRADLEY, RONON, STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
457 Haddonfield Road, Suite 100
Cherry Hill, NJ  08002
T: (856) 321-2400
F: (856) 321-2415
E: RNorcia@Stradley.com
   DSirota@Stradley.com

*Attorneys for Defendant Horizon Blue Cross Blue Shield of New Jersey*

Dated: January 27, 2023