## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GPS OF NEW JERSEY M.D., P.C.**<br>**A/S/O T.U.,**<br><br>　　　**Petitioner,**<br><br>　　　**v.**<br><br>**HORIZON BLUE CROSS & BLUE**<br>**SHIELD,**<br><br>　　　**Respondent.** | Civ. No. 22-6614 (KM) (JBC)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Presently before the Court is the petition of GPS of New Jersey M.D., P.C. a/s/o T.U. ("GPS") to vacate an arbitration award. (DE 1.)[1] Respondent Horizon Blue Cross & Blue Shield ("Horizon") filed a cross-motion to confirm the arbitration award. (DE 12.) For the reasons set forth below, GPS's motion to vacate the arbitration award is **DENIED** and Horizon's motion to confirm the arbitration award is **GRANTED**. The Court's reasoning, however, reflects the state of the law in the interregnum between the judicial invalidation of a certain interim rule by a decision filed on February 23, 2022, and the adoption of a new and different rule, effective October 25, 2022. *See* Section III.A, *infra*.

---

[1]　Citations to the record will be abbreviated as follows:

"DE" = Docket entry number in this case

"Pet." = GPS's Petition to Vacate Arbitration Award (DE 1 & 1-5)

"Cross Mot." = Horizon's Brief in Opposition to GPS's Petition to Vacate and in Support of Cross-Motion to Confirm Arbitration Award (DE 12-1)

"Opp." = GPS's Brief in Opposition to Horizon's Cross-Motion to Confirm Arbitration Award (DE 18)

"Arb. Op." = Decision of Island Peer Review Organization d/b/a iPro, issued August 18, 2022 (DE 18-4)

## I.    BACKGROUND

GPS is a medical practice in New Jersey. (Pet. p. 1 ¶ 1.) On February 5, 2022, GPS provided emergency plastic surgery services to patient T.U. (*Id.* p. 2 ¶ 1.) Following the procedure, GPS submitted a bill for the services to Horizon, T.U.'s insurance carrier. (*Id.* ¶ 2.) GPS is an out-of-network provider with respect to Horizon. (*Id.* ¶ 3.) In adjudicating the claim, Horizon remitted partial payment in the amount of $430.84, with $362.05 applied to T.U.'s deductible and $46.36 paid to GPS. (*Id.*; *see* DE 1-5 p. 28; Cross Mot. p. 7.)

Because GPS is an out-of-network provider and the services were emergent or unanticipated in nature, Horizon's partial payment was subject to the No Surprises Act (the "Act"), Pub. L. No. 116-260 (2020), codified at 42 U.S.C. § 300gg-111 *et seq.* (Pet. p. 2 ¶ 3.) Pursuant to the Act, discussed in more detail below, GPS and Horizon submitted to independent dispute resolution ("IDR") arbitration before the IDR entity Island Peer Review Organization, d/b/a/ iPRO (herein, "iPRO"). (*Id.* ¶¶ 6–7); *see* 42 U.S.C. § 300gg-111(c)(1)(B).

GPS and Horizon submitted their proposed offers of payment and other information to iPRO for consideration. (Pet. ¶ 7; Cross Mot. p. 7.) GPS's proposed reimbursement figure was approximately $27,556, whereas Horizon's figure was $408.41. Under the applicable rules, the arbitrator was tasked, not with arriving at its own dollar figure, but with choosing between the parties' positions. (*See* Pet. Ex. B; Cross Mot. Ex. 1.)

On August 18, 2022, iPRO issued a written payment determination. The substantive portion of that written determination states:

> iPRO has reviewed your Independent Dispute Resolution (IDR) dispute with reference number DISP-03934 and determined:
>
> The out-of-network payment amount of $408.41 offered [by] Horizon BCBS under this dispute has been selected as the appropriate out-of-network rate for the following reason(s) –
>
> • After reviewing all correspondence from both parties, we have determined that Horizon BCBS provided more credible evidence

2

to support their offer as fair and reasonable for the services in dispute.

(Arb. Op. p. 1.)

GPS filed its petition to vacate the arbitration award on November 15, 2022. (DE 1.) On January 27, 2023, Horizon filed a cross-motion to confirm the arbitration award. (DE 12.) GPS filed its opposition on February 27, 2023 (DE 18), to which Horizon replied on March 13, 2023 (DE 19). GPS's petition to vacate and Horizon's cross-motion to confirm the arbitration award are fully briefed and ripe for decision.

## II.   NO SURPRISES ACT

### A. Arbitration of reimbursement decisions under the Act

Congress enacted the No Surprises Act on December 27, 2020, to address "surprise medical bills." *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 533 (E.D. Tex. 2022). "Generally, the Act limits the amount an insured patient will pay for emergency services furnished by an out-of-network provider and for certain non-emergency services furnished by an out-of-network provider at an in-network facility." *Id.* (citing 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132).

The Act also establishes a procedure for the payment of out-of-network providers by health insurers. Where, as here, the out-of-network provider is dissatisfied with the amount paid by the insurer and the parties are unable to resolve the dispute through negotiations, the parties may then proceed to IDR arbitration. 42 U.S.C. § 300gg-111(c)(1)(B).

The IDR entity must be certified through a process established by the Secretaries of Health and Human Services, Labor, and the Treasury, and must have "sufficient medical, legal, and other expertise" to make a determination under the Act. 42 U.S.C. § 300gg-111(c)(4)(A). The arbitration process is "baseball-style," meaning that the provider and insurer each submit a final

offer, and the IDR entity must select one of the two proposed amounts.[2] *See Texas Med. Ass'n*, 587 F. Supp. at 534; 42 U.S.C. §§ 300gg-111(c)(5)(A)–(B). When choosing between the two offers, the IDR entity must consider a number of factors:

(i) In general

In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR item or service shall consider--

(I) the qualifying payment amounts (as defined in subsection (a)(3)(E)) for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR item or service; and

(II) subject to subparagraph (D), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

(ii) Additional circumstances

For purposes of clause (i)(II), the circumstances described in this clause are, with respect to a qualified IDR item or service of a nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer of group or individual health insurance coverage the following:

(I) The level of training, experience, and quality outcomes measurements of the provider or facility that furnished such item or service (such as those endorsed by

---

[2]     The reference, of course, is not to game of baseball *per se*, but to Major League Baseball salary arbitration. A form of "pendulum" arbitration, this procedure is designed to encourage reasonable compromise offers, *i.e.,* to push both parties from the extremes to the center for fear of losing all in the arbitration. *See, e.g.,* M.H. Bazerman and D. Kahneman, "How to Make the Other Side Play Fair," Harvard Business Review (Sept. 2016), available online at https://hbr.org/2016/09/how-to-make-the-other-side-play-fair.

the consensus-based entity authorized in section 1395aaa of this title).

(II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.

(III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.

(IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.

(V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

42 U.S.C. § 300gg-111(c)(5)(C). The IDR entity is also prohibited from considering usual and customary charges, the amount the provider would have billed for the item or service had the Act not applied, or the reimbursement rates for the item or service by a public payor. 42 U.S.C. § 300gg-111(c)(5)(D).

**B. Standard of judicial review of arbitration award under the Act**

Pursuant to 42 U.S.C. § 300gg-111(c)(5)(E), any determination of the IDR entity is binding on the parties and is only subject to judicial review under the circumstances described in Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10. Section 10(a) of the FAA, incorporated by reference, provides four grounds upon which a district court may vacate the arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of

any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Most pertinent here are Sections 10(a)(3) and (4). Under Section 10(a)(3), "misconduct" is conduct that "so affects the rights of a party that it may be said that [the party] was deprived of a fair hearing." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). A "fair hearing" is "one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." *Id.* To vacate an award under Section 10(a)(4), the plaintiff must show that the arbitrator "grant[ed] relief in a form that cannot be rationally derived from the parties' agreement and submissions or issue[d] an award that is so completely irrational that it lacks support altogether." *CPR Mgmt., S.A.*, 19 F.4th at 246 (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219–20 (3d Cir. 2012)) (cleaned up).

That limited standard of review reflects a strong presumption in favor of enforcing arbitration awards. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). "The United States Supreme Court has held that 'the courts play only a limited role when asked to review the decision of an arbitrator.'" *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n PASNAP*, 453 F. App'x 258, 260 (3d Cir. 2011) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). The moving party bears the burden of proving that the arbitration award at issue should be vacated, and the courts must "accord arbitration decisions exceptional deference." *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d. Cir. 2010). Further, an arbitration "award is presumed valid unless it is affirmatively shown to be otherwise." *Brentwood Med. Assocs.*, 396 F.3d at 241.

6

### III.    MOTION TO VACATE ARBITRATION AWARD

GPS seeks to vacate the arbitration award under 9 U.S.C. §§ 10(a)(3) and (4) (Pet. p. 6.) According to GPS, the arbitrator refused to hear pertinent and material evidence, engaged in prejudicial misbehavior, and so imperfectly executed its powers that "a mutual, final, and definite award upon the subject matter submitted was not made." (Opp. p. 6.) More specifically, GPS asserts that iPro's one-sentence decision is a "net opinion" that fails to address the factors found in 42 U.S.C. § 300gg-111(c)(5)(C) and violates Federal Rule of Civil Procedure 52(a)(1).[3] GPS also contends that it is prejudiced because the IDR entity's written payment determination is unsigned. GPS further argues that the IDR entity improperly applied a presumption in favor of the "qualifying payment amount" or "QPA."[4] (Pet. ¶¶ 9–11 & pp. 6–8; Opp. pp. 5–13.) I address each argument in turn.

#### A.    The vacated interim rule

Two of the pertinent issues raised by GPS concern the arbitrator's allegedly impermissible employment of a presumption in favor of the QPA, and the arbitrator's failure to file a reasoned decision describing the particular grounds for the award. Before considering GPS's substantive arguments, I must address an issue, addressed incompletely or not at all by the parties,

---

[3]    I dispose of this contention quickly. Federal Rule of Civil Procedure 52(a)(1) states: "In an action tried on the facts without a jury or with an advisory jury, *the court* must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by *the court.*" (emphasis added). Rule 52 governs findings of fact and conclusions of law by a district court to whom a matter has been submitted for a bench trial. GPS provides no support for its contention that the Rule applies to the IDR process under the No Surprises Act. I will not vacate the arbitration award on this basis.

[4]    The QPA generally means "the median of the contracted rates recognized by the plan or issuer . . . under such plans or coverage, respectively, on January 31, 2019, for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished," with increases based on the consumer price index. 42 U.S.C. §§ 300gg-111(a)(3)(E)(i)(I)–(II).

concerning the applicability and effect of certain regulations promulgated pursuant to the No Surprises Act. As indicated above, I conclude that this case falls into an eight-month gap between the invalidation of an old regulation and the promulgation of a new one. For lack of a better option I will therefore default to generally applicable principles of arbitration law.

On September 30, 2021, the relevant Departments issued what I will call the Interim Rule. Requirements Related to Surprise Billing: Part II, 86 Fed. Reg. 55,980 (Oct. 7, 2021)).[5] The Interim Rule in effect instructed the arbitrator to apply a presumption in favor of the QPA. In evaluating the two sides' offers "baseball-style," the IDR arbitrator would be required to file a reasoned decision only if the arbitrator did not choose the offer closest to the QPA:

> If the certified IDR entity does not choose the offer closest to the qualifying payment amount, the certified IDR entity's written decision must include an explanation of the credible information that the certified IDR entity determined demonstrated that the qualifying payment amount was materially different from the appropriate out-of-network rate, based on the considerations allowed under paragraph (c)(4)(iii)(B) through (D) of this section, with respect to the qualified IDR item or service.

45 C.F.R. § 149.510(c)(4)(vi)(B).

The Interim Rule had an effective date of October 7, 2021. It did not last long. By decision filed on February 23, 2022, the U.S. District Court for the Eastern District of Texas vacated the Interim Rule. *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 549 (E.D. Tex. 2022), *appeal dismissed*, No. 22-40264, 2022 WL 15174345 (5th Cir. Oct. 24, 2022).

That ruling had two bases. First, the *Texas Medical Association* court reasoned that the Interim Rule conflicted with the text of the No Surprises Act

---

[5]     For simplicity, I will cite the HHS version of the Interim Rule that appeared at 45 C.F.R. § 149.510(c)(4)(vi)(B). As noted, responsibility is shared among the Secretaries of Health and Human Services, Labor, and the Treasury. Accordingly, substantively identical rules appeared at 29 C.F.R. § 2590.716-8(C)(4)(vi)(B) (Labor) and 26 C.F.R. § 54.9816-8T(c)(4)(vi)(B) (Treasury).

because the Act "plainly requires arbitrators to consider all the specified information in determining which offer to select," that it "nowhere states that the QPA is the 'primary' or 'most important' factor," and that the Act does not impose a "rebuttable presumption" in favor of the QPA. *Id.* at 541. The court concluded that the rule impermissibly altered the requirements of the Act and must be vacated. *Id.* at 543. Second, the *Texas Medical Association* court concluded that, in the course of promulgating the Interim Rule, the Departments had failed to provide for notice and comment as required under the Administrative Procedure Act. *Id.* at 543–548. For this additional reason, the rule was flawed at the inception. Accordingly, the Eastern District of Texas held that the "the following provisions of the Rule are VACATED: . . . 45 C.F.R. § 149.510(c)(4)(vi)(B); . . . 26 C.F.R. § 54.9816-8T(c)(4)(vi)(B); . . . and 29 C.F.R. § 2590.716-8(c)(4)(vi)(B)." 587 F. Supp. 3d at 549.

As noted, the date of that Eastern District of Texas decision was February 23, 2022. As of that date, the Interim Regulation became a nullity. On August 18, 2022, the iPro payment determination at issue in this case was filed.

In the meantime, however, the administrative agencies had been at work. In response to *Texas Medical Association*, the Departments issued a final rule on August 26, 2022, with an effective date of October 25, 2022, found at 45 C.F.R. § 149.510(c)(4)(vi)(B); 29 C.F.R. § 2590.716-8(c)(4)(vi)(B); and 26 C.F.R. § 54.9816-8(c)(4)(vi)(B)). *See* Requirements Related to Surprise Billing, 87 Fed. Reg. 52618-01 (Oct. 25, 2022). The new rule eschews the prior reliance on the QPA, and it requires a reasoned decision in *all* cases:

> The certified IDR entity's written decision must include an explanation of their determination, including what information the certified IDR entity determined demonstrated that the offer selected as the out-of-network rate is the offer that best represents the value of the qualified IDR item or service, including the weight given to the qualifying payment amount and any additional credible information under paragraphs (c)(4)(iii)(B) through (D) of this section. If the certified IDR entity relies on information described under paragraphs (c)(4)(iii)(B) through (D) of this section

in selecting an offer, the written decision must include an
explanation of why the certified IDR entity concluded that this
information was not already reflected in the qualifying payment
amount.

45 C.F.R. § 149.510(c)(4)(vi)(B).

That new rule, however, post-dated the decision at issue by eight days,
and it expressly provides that its effective date falls still later, on October 25,
2022. It therefore does not apply to the present case. *See Sathanthrasa v. Att'y
Gen. United States*, 968 F.3d 285, 293 n.5 (3d Cir. 2020) (quoting *Bowen v.
Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)) ("[A]dministrative rules will
not be construed to have retroactive effect unless their language requires this
result.").[6]

## B. Adequacy of the brief written payment determination

GPS essentially argues that there is nevertheless an implied requirement
that the written payment determination be a reasoned decision. It contends
that by failing to address in writing each of the required factors found in 42
U.S.C. § 300gg-111(c)(5)(C) in its written payment determination, iPro refused
to hear relevant evidence in violation of Section 10(a)(3) of the FAA. GPS
contends that it submitted to iPro a brief with exhibits presenting its position
on the required factors, "additional credible information," and its final offer.
(Pet. Ex. B.) GPS claims that iPro cannot have considered its submissions
because iPro's written payment determination consisted of only one sentence.
(*See* Arb. Op.)

The arbitration decision is skimpy in the extreme, and as a reviewing
court I would prefer to see more. I nevertheless find that the brevity of iPro's
decision, alone, does not satisfy GPS's burden of proving that the arbitration
award at issue must be vacated. Contrary to GPS's position that evidence was
ignored, iPro's written payment determination states that it reviewed "all
correspondence from both parties," and found Horizon's evidence as to the fair

---

[6]    The parties have not raised any argument regarding the retroactive application
of the final rule to iPro's decision.

and reasonable charge to be "more credible." GPS fails to identify any indication that iPro should not be taken at its word. Rather, GPS takes the lack of a written explanation to be indicative of failure to give the matter due consideration.

As noted, iPro issued its written payment determination on August 18, 2022, after the Interim Rule was vacated, but before the Departments issued new regulations requiring a reasoned award. During that period there appears to have been no currently operative statute or rule requiring a reasoned written payment determination. The Court must therefore default to more general principles of arbitration law.

It is a fundamental background principle of arbitration law that "arbitrators are under no obligation to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). No further requirement of a reasoned award can be found in the No Surprises Act itself. The requirement that arbitrators be certified by the relevant government agencies was apparently deemed sufficient to ensure that they would apply the standards of 42 U.S.C. § 300gg-111(c), subject only to the safeguards of the FAA, 9 U.S.C. § 10(a), in cases of procedural failure or abuse.[7]

In search of some other legal requirement that the arbitrator furnish a reasoned decision, GPS cites "Federal Independent Dispute Resolution (IDR) Process Guidance for Certified IDR Entities" dated April 2022 (hereinafter the "Guidance," submitted as Pet. Ex. C & Opp. Ex. A.) The first page of this

---

[7]     Indeed, there is every indication that Congress meant to prioritize efficiency in these arbitrations. The arbitrator is not called on, for example, to perform its own adjudication as to what a reasonable rate of reimbursement would be. The "baseball-style" procedure merely requires the arbitrator to pick which of the two proposals is the more persuasive.

11

document, however, states that it is not binding on the parties and does not have the force of law:

> The contents of this document do not have the force and effect of law and are not meant to bind the public in any way, unless specifically incorporated into a contract. This document is intended only to provide clarity to the public regarding existing requirements under the law.

(Guidance p. 1.) In any event, the Guidance does not support GPS's argument that the IDR entity's one-sentence written payment determination is legally inadequate. The Guidance requires the IDR entity to *consider* the factors found in 42 U.S.C. § 300gg-111(c)(5)(C), not to discuss them expressly in the award: "In determining which offer to select, the certified IDR entity must *consider*: [t]he QPA(s) . . . [and] [a]dditional credible information relating to the offers submitted by the parties that relates to the circumstances[.]"[8] (*See* Guidance pp. 18–22 (emphasis added).) The Guidance relied on by GPS does not require the IDR entity to provide a written decision detailing how it considered the additional credible information. The Guidance contemplates only that the IDR entity shall "explain its payment determination by submitting a written decision through the Federal IDR portal. Details on the form and manner for submitting the written decision will be provided in future guidance." (Guidance p. 25.) No such "future guidance" is cited by the parties here.

GPS cites to two cases (neither of them under the No Surprises Act) for the proposition that an arbitrator is legally required to provide more than a brief, conclusory decision: *Galloway Const., LLC v. Utilipath*, LLC, No. 13-cv-161, 2014 WL 3965118 (E.D. Tenn. Aug. 13, 2014), *on reconsideration*, No. 13-cv-161, 2014 WL 5361984 (E.D. Tenn. Oct. 21, 2014), and *Hagshama Manhattan 10 Gold, LLC v. Strulovitz*, No. 20-cv-04839, 2021 WL 1178028 (S.D.N.Y. Mar. 28, 2021), *appeal withdrawn* (Aug. 11, 2021). Both, however, rely on the particular provisions of the arbitration agreements there at issue.

---

[8]     The Guidance provides a table of "additional information" that follows the five factors found in 42 U.S.C. § 300gg-111(c)(5)(C). (Guidance p. 21.)

In *Galloway*, the defendants sought to vacate an arbitration award because, among other reasons, the arbitration panel failed to render a "reasoned" award. 2014 WL 3965118 at *1. That arbitration award, they claimed, "fail[ed] to mention and analyze all of the defendants' counterclaims and defenses, fail[ed] to make a connection between the facts at issue and the conclusions reached, and [was] otherwise unreasoned and perfunctory." *Id.*

*Galloway* started from the general proposition that "arbitrators are under no obligation to give their reasons for an award." *Id.* at *2 (citing *United Steelworkers of America*, 363 U.S. at 598).) That general principle, however, may be altered by agreement of the parties, and *Galloway* found that those parties' arbitration agreement did indeed require a reasoned award: "[T]he arbitration agreement *required* the arbitration panel to analyze the issues, claims, counterclaims, and defenses of the parties and provide a 'reasoned' award on the merits of the parties' claims and counterclaims." *Id.* (emphasis added). So it was based on those parties' private contractual agreement that the *Galloway* court vacated the arbitration panel's award for failure to state an express rationale. *Id.* at *2–*4. The *Galloway* court did not hold that an award without supporting reasons would have violated the Arbitration Act (or, of course, the No Surprises Act) as such.

In *Hagshama*, the court was similarly tasked with deciding whether to confirm or vacate an arbitration award. 2021 WL 1178028 at *1. Like *Galloway*, the *Hagshama* Court recognized the fundamental proposition that an arbitrator generally does not need to provide a rationale for the award:

> "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case'." *D.H. Blair* [& *Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)] (citing *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (citing *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

*Hagshama*, 2021 WL 1178028 at *4. However, as in *Galloway*, the parties' arbitration agreement imposed the additional requirement that the arbitrator render a "reasoned decision" that "set[] forth the basic reasoning of the arbitral panel on the central issue or issues raised before it." *Id.* at *5 (quoting *Leeward Constr. Co. v. Am. Univ. of Antigua - Coll. of Med.*, 826 F.3d 634, 636, 640 (2d Cir. 2016)).[9]

Unlike the dissatisfied parties in *Galloway* and *Hagshama*, GPS does not point to any private agreement requiring that the arbitrator issue a reasoned decision. There being no arbitration agreement or other contract imposing such a requirement, we are thrown back on the general principle that "arbitrators are under no obligation to give their reasons for an award."

Here, iPro submitted a written decision that clearly set forth its payment determination. (*See* Pet. Ex. A.) GPS fails to cite to any provision of the Act or private contractual agreement that would render such a written decision, however brief, invalid *per se*. To invalidate an award, a party to the arbitration must show more—in particular, one of the essential flaws in the arbitration process that is set forth in 9 U.S.C. § 10(a). GPS hypothesizes that the arbitrator could have reached a result contrary to GPS's position only by refusing to "hear" GPS's evidence. But the arbitrator here did not rule that GPS's evidence was inadmissible, and it affirmatively represented that it had considered all of the submissions in arriving at its decision. While it is possible to disagree with the arbitrator's award, there is no demonstration it could not have been reached based on the written record before the arbitrator.

I must therefore conclude that GPS has not met its burden of showing that the IDR entity refused to hear relevant evidence, in violation of Section 10(a)(3) of the FAA, or otherwise failed to fulfill any requirement that it render a reasoned decision.

---

[9]   In any event, the *Hagshama* court ultimately determined that the arbitrator did sufficiently state its rationale and addressed the respondent's arguments *Id.*

### C. Presumption in favor of the QPA

As noted above, *Texas Medical Association*, decided before the award was rendered here, vacated the then-applicable regulation, finding no basis in the statute for a presumption in favor of an award in the amount of the QPA. The QPA in this matter is $408.41, the same amount awarded in arbitration. (*See* Arb. Op.; Pet. p. 8; DE 12-2.) GPS concludes that iPro must therefore have applied a presumption in favor of the QPA, to the prejudice of GPS. (Pet. p. 8.) According to GPS, the IDR entity's conclusion that "Horizon BCBS provided more credible evidence to support their offer as fair and reasonable for the services in dispute . . . appears to have presumed the QPA to be correct, and concluded that as [GPS] failed to present sufficient evidence or argument to rebut same, the QPA was, therefore, the appropriate out-of-network rate." (Pet. p. 8.) GPS points to no other support for its contention that the IDR entity applied a presumption in favor of the QPA.

The QPA generally means "the median of the contracted rates recognized by the plan or issuer . . . under such plans or coverage, respectively, on January 31, 2019, for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished," with increases based on the consumer price index. 42 U.S.C. §§ 300gg-111(a)(3)(E)(i)(I)–(II). "In other words, the QPA is typically the median rate the insurer would have paid for the service if provided by an in-network provider or facility." *Texas Med. Ass'n*, 587 F. Supp. 3d at 535.

*Texas Medical Association* disallowed a presumption in favor of the QPA, but it did not of course prohibit consideration of the QPA or disallow any award that equaled or approximated the QPA. GPS's burden here would be to show that iPro applied a *presumption* in favor of the QPA, a different matter. GPS has not made such a showing. The Act goes no farther than to require the parties to submit their final offers to the IDR entity and to require the IDR entity to select one of those two amounts. *See* 42 U.S.C. §§ 300gg-111(c)(5)(A)–(B); *Texas Med.*

15

*Ass'n*, 587 F. Supp. at 534. Here, Horizon offered $408.41, which was equivalent to the QPA, and GPS sought approximately $27,556. (Pet. Ex. B; Cross Mot. Ex. 1.) After reviewing all correspondence by the parties, iPro selected Horizon's offer as the more convincing—not necessarily "correct" in some larger sense, but more persuasive than GPS's offer. Now it is true that Horizon's offer was equivalent to the QPA, but that fact alone is not enough to show that the IDR entity applied some impermissible presumption in favor of the QPA. The IDR entity did not so much as mention the QPA or give any indication that it accepted Horizon's offer based on a presumption. What it said was that it had considered all the evidence, reviewed the two offers, and found Horizon's the more convincing of the two.

    That "baseball-style" procedure may have failed in its purpose of pushing both sides to the middle. *See* p.4 n.2, *supra*. The offers remained very far apart, and the arbitrator's decision may have reflected no more than a rough determination that GPS's offer was, so to speak, farther out of the ballpark. There is no showing that the error claimed by GPS, assuming it would be an error, occurred.[10] GPS has not met its burden of showing that the IDR entity's

---

[10]    I therefore note, but need not reach, the vexed issue of whether and to what extent an error of law requires reversal of an arbitration award. Returning to first principles, I find that GPS has not met its burden of showing an entitlement to reversal of the award on any of the four bases set forth under 9 U.S.C. § 10(a). The No Surprises Act is very clear that the determination of the IDR entity is subject to judicial review under the circumstances described in Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10. 42 U.S.C. § 300gg-111(c)(5)(E). *See CPR Mgmt, S.A.*, 19 F.4th at 245 (listing these circumstances as the exclusive grounds to vacate an arbitration award). Courts may only consider these § 10(a) grounds, which do not include ordinary errors of law of the kind that might justify reversal on appeal. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986). Nothing like lawlessness, or "manifest disregard" of the law, to the extent that may be relevant, has been demonstrated here. *Bayside Construction LLC v. Smith*, No. 21-2716, 2022 WL 2593303, at *2 n.6 (3d Cir. July 8, 2022) (outside of No Surprises Act context, "assum[ing] without deciding" that an arbitration award could be vacated based on such "manifest disregard of the law").

selection of Horizon's final offer was based on a presumption in favor of the QPA, or that it is judicially reversible on that basis.

### D. Certification of the IDR entity/Lack of signature

GPS disputes the arbitration decision because it is "unsigned and gives no indication as to the qualifications or identity of the individual who authored it." (Pet. ¶ 11; *see also* Pet. pp. 4–5.) As a result, GPS claims that it was prejudiced. As discussed, *supra*, the IDR entity must be certified through a process established by the Secretaries of Health and Human Services, Labor, and the Treasury, and must have "sufficient medical, legal, and other expertise" to make a determination under the Act. 42 U.S.C. § 300gg-111(c)(4)(A). GPS does not dispute iPro's qualification as a certified IDR entity under the Act. (*See* Pet. ¶ 6 (stating that iPro is an "approved IDR entity").) Rather, GPS objects because the name of the individual at iPro who made the decision is unstated. GPS does not point to any requirement in the Act, the Guidance, or case law that the certified IDR decisionmaker be a disclosed natural person. I conclude that GPS has not met its burden of showing that it was prejudiced by the individual arbitrator's anonymity.

For all of the above reasons, the motion to vacate the arbitration award will be denied.

## IV.   CROSS-MOTION TO CONFIRM ABITRATION AWARD

Horizon filed a cross motion to confirm the arbitration award. Section 9 of the FAA states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

17

9 U.S.C. § 9. In short, unless the arbitration award is vacated pursuant to Section 10 or modified or corrected under Section 11 of the FAA, the award "must" be confirmed. In interpreting 9 U.S.C. § 9, "language that indicates the award will be final and binding implicitly permits Federal court intervention to compel compliance." *New Jersey Bldg. Laborers' Statewide Ben. Funds v. Newark Bd. of Educ.*, No. 12-cv-7665, 2013 WL 5180433, at *3 (D.N.J. Sept. 13, 2013) (quoting *Teamsters–Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 347 (D.N.J.1997)). In this case, the Act provides that any determination of the IDR entity is binding on the parties and is only subject to judicial review under the circumstances described in Section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10. § 300gg-111(c)(5)(E). That language indicates the decision is to be "final and binding," and gives the court the authority to confirm the award.

As set forth above, GPS has not met its burden of proving that the arbitration award at issue should be vacated. Accordingly, I will confirm the arbitration award.

## V.    CONCLUSION

For the reasons stated herein, GPS's motion to vacate the arbitration award is **DENIED** and Horizon's motion to confirm the arbitration award is **GRANTED**. A separate order will issue.

Dated: September 8, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**